# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

In re: Cincinnati Policing,

:      Case No. C-1-99-3170

     District Judge Susan J. Dlott
     Magistrate Judge Michael R. Merz

:

## DECISION AND ORDER ON EVALUATION PROTOCOL

This matter is before the Court at the request of the parties (particularly Plaintiffs and the Fraternal Order of Police) and pursuant to the dispute resolution process of the Collaborative Agreement. To resolve the question, the Court conducted a telephone conference with deputy monitor Richard Jerome, counsel for the City of Cincinnati, the FOP and the Plaintiffs, and Professors Eck and Lieu. The parties seek a ruling on the methodology to be followed for the public release of the report on traffic stops prepared by Professors Eck and Lieu.

At issue is the application of the terms of the Collaborative Agreement to the release of the traffic stop study. To whom is the traffic study report to be addressed? Are there any duties under the Collaborative Agreement with regard to the release of the report?

After hearing presentations from each of the parties and deputy monitor, the Court makes the following findings:

1. The traffic stop study was initially authorized by Cincinnati City Ordinance 88-2001;

2. Paragraph 51 of the Collaborative Agreement provides:

> 51. The City, pursuant to Ordinance 88-2001, has commenced an effort to measure whether any racial disparity is present in motor vehicle stops by the CPD. The analysis of this data will be reported

pursuant to Paragraph 39.

3. Paragraphs 39 and 40 of the Collaborative Agreement provide:

> 39. Compilations shall include an analysis, by percentage attributable to each of the fifty-two (52) city neighborhoods:
> Arrests
> 1. Reported crimes and drug complaints
> 2. Citations of vehicles and pedestrians
> 3. Stops of vehicles and pedestrians without arrest or issuance of citation
> 4. Uses of force
> 5. Citizen reports of positive interaction with members of the CPD by assignment, location, and nature of circumstance
> 6. Reports by members of the CPD of unfavorable conduct by citizens in encounters with the police
> 7. Injuries to officers during police interventions
> 8. Injuries to citizens during arrests and while in police custody
> 9. Citizen complaints against members of the CPD
>
> 40. For each of the above items, the city shall provide to the Monitor incident-based data so that the nature, circumstances, and results of the events can be examined. These data will allow examination of trends in the use of force, their geographic patterns, their association with criminal activity, and differences among groups.

4. Paragraph 30 of the Collaborative Agreement provides:

> 30. The Parties, in consultation with appropriate experts and under the supervision of the Monitor, shall develop a system of evaluation to track the attainment of goals agreed to between the Parties in the Collaborative Agreement. …The Parties will regularly meet with the Monitor to study the results of the evaluation instruments and determine what changes, if any, in the Agreement or in their actions should be pursued in light of the evaluation results. That system shall also include a plan for determining what parts of this evaluation oversight may be transferred from the Monitor's supervision to a successor agency before this Agreement expires in order that ongoing evaluation efforts of police-community relations continue.

The Collaborative Agreement is a comprehensive document that commits the FOP, the Plaintiffs, and the City to a wide range of actions designed to ensure racial fairness and mutual accountability, and increase trust between police and the community. The Agreement includes an commitment to extensive evaluation. The matters to be evaluated are necessarily very sensitive. Paragraph 51 incorporates the traffic study report into the collaborative evaluation process. Paragraph 30 makes it clear that the collaborative evaluation process is to proceed "under the supervision of the Monitor." Paragraph 30 further requires the parties to meet with the Monitor and "determine what changes, if any, in the Agreement or in their actions should be pursued in light of the evaluation results." The goal of the evaluation section of the Agreement is obviously to commit the parties to work together to learn from their ongoing research. Giving the parties time to meet with the monitor and discuss these issues is necessarily part of the Monitor's supervision. In this regard it is similar to the process currently followed under which the Monitor confidentially shares a draft of the quarterly reports with the parties before their release. This period of consultation prior to public release of such documents permits the parties to frame their positions and recommit to positive, constructive discourse on these sensitive matters. It does not eliminate disagreement; it does provide time for reasoned discussion, clarification of what is agreed and not agreed, and formulation of a plan for ongoing action.

THEREFORE IT IS ORDERED THAT

The traffic study report and all supporting tables, analysis, and related work product from Professors Eck and Lieu shall be directed in the first instance to the Monitor who shall share the report with the parties under the terms of the protective order in this case for a period of 45 days. At the end of that period the parties and the Monitor shall publicly release the report with any

additional understandings they have reached in light of their obligations under paragraph 30.  No person, including the consultants preparing the report, may release the report, any portion thereof, or related materials to anyone prior to the completion of that process.

October 6, 2003.

s/ **Michael R. Merz**
United States Magistrate Judge
