**EMERGENCY**

# City of Cincinnati
# An Ordinance No. 88 -2001

MODIFYING the provisions of Article IV, Department of Safety, of the Administrative Code of the City of Cincinnati, by ordaining supplementary section 7, thereof, to be entitled Duties With Respect to Racial Profiling, to provide a definition of racial profiling, to forbid the practice of racial profiling, to require the preparation of reports of stops and arrests in order to compile data that can be used to assure that such practices play no part in the City's law enforcement activities, and to provide that the Civil Service disciplinary process will be scrupulously followed to assure that the practice of racial profiling will have no place in the law enforcement policies and practices of the City of Cincinnati.

WHEREAS, the practice of racial profiling has gained great national, state and local attention and is recognized by the Council of the City of Cincinnati as a reprehensible practice that can severely undermine public confidence in law enforcement, can hamper legitimate law enforcement activities, and create an atmosphere of fear and distrust that no citizen of this Country, State or City should have to endure; and

WHEREAS, the President of the United States has issued an Executive Order stating that stopping or searching individuals on the basis of race is not an effective law enforcement policy, that it is inconsistent with our democratic ideals, especially our commitment to equal protection under the law for all persons, and that it is neither legitimate nor defensible as a strategy for public protection, and instructing law enforcement agencies within the Departments of Justice, Treasury and Interior to collect race, ethnicity and gender data on the people they stop or arrest; and

WHEREAS, the City Council has supported efforts to assure that racial profiling is not a factor in State and local law enforcement activities by the passage of Resolution No. 82-1999, that urged the Ohio General Assembly to pass legislation that would provide for the recording of detailed data whenever a law enforcement officer causes the operator of a motor vehicle being operated on a street or highway to stop the motor vehicle; and

WHEREAS, the City of Cincinnati Safety Division has adopted a policy against racial profiling developed in order to address the perception that the Division engages in such practice, which policy reads as follows:

> "No law enforcement agency should condone or promote the use of any illegal profiling system in its enforcement program. Criminal elements exist in every segment of our society. An officer whose enforcement stops are based on race or ethnicity is engaged in a practice which undermines legitimate law enforcement, and may face claims in Federal courts of civil rights violations. To focus on a single segment of society is to limit enforcement efforts.
>
> Awareness is the key to success in criminal interdiction. Observation must be evaluated in the aggregate - not isolation. An officer must use all senses while avoiding the development of tunnel vision. An important factor to remember when

*AMENDED ON THE FLOOR OF COUNCIL 03/28/2001

EXHIBIT A

conducting an enforcement stop is to take the time to do it right. Do not rush through the stop or an important indicator of illegal activity may be missed."

and,

WHEREAS, the overwhelming majority of police officers perform their duties in a professional and impartial manner, free from bias; and

WHEREAS, the International Association of Chiefs of Police recognizes that tensions created by some police contacts with citizens have become a concern to police and citizens alike; and

WHEREAS, Council is desirous of putting in place various monitoring and reporting procedures to assure that no racial profiling is tolerated or condoned in the law enforcement activities of the City and to assure our citizens that this matter is of utmost import and will be given exacting attention by the Council of the City of Cincinnati and the administrative offices of the City of Cincinnati that deal with law enforcement activities: now, therefore,

BE IT ORDAINED by the Council of the City of Cincinnati, State of Ohio:

Section 1. That the provisions of Article IV, Department of Safety, of the Administrative Code of the City of Cincinnati, is hereby amended by ordaining supplementary section 7 thereof, to be entitled Duties With Respect to Racial Profiling, to read as follows:

"Section 7. **Duties with Respect to Racial Profiling.**

(a) Racial profiling shall mean the detention, interdiction or other disparate treatment of an individual using the racial or ethnic status of such individual as a factor, other than in the case of a physical description.

No member of the police force shall engage in racial profiling. The detention of an individual based on any noncriminal factor or combination of noncriminal factors is inconsistent with this subsection. Except for purposes of a suspect physical description, race or ethnicity of an individual shall not be a factor in determining the existence of probable cause to take into custody or to arrest an individual or constitute a reasonable and articulable suspicion that an offense has been or is being committed so as to otherwise justify the detention of an individual or the investigatory stop of a motor vehicle.

Any member of the police force who engages in racial profiling shall be subject to disciplinary action, in accordance with applicable civil service law, up to and including dismissal.

(b) Commencing on *April 8*, [May 7,] 2001, the Department of Safety shall, using the form developed and promulgated pursuant to subsection (c) hereof, record and retain the following information for all motor vehicle stops: (1) the number of vehicle occupants; (2) characteristics of race, color, ethnicity, gender and age of such persons, provided the identification of such characteristics shall be based on the observation and perception of the police officer responsible for reporting the stop and

the information shall not be required to be provided by the person stopped; (3) the nature of the stop; (4) the location of the stop; (5) if an arrest was made, the misdemeanor or crime charged; (6) if a search was conducted, whether the individual consented to the search, the probable cause for the search, whether the individual's property was searched, and the duration of the search; (7) whether any contraband was discovered in the course of the search and the type of any contraband discovered; and (8) any additional information that the Safety Director, in consultation with the Chief of Police, deems appropriate.

(c) The Safety Director and the Chief of Police, with the assistance of any other persons that they deem appropriate, shall develop and promulgate a form, in both printed and electronic format, to be used by police officers when making a traffic stop to record information pursuant to subsection (b) hereof.

(d) The City of Cincinnati shall develop an RFP to contract ~~with a university or agency to provide~~ an independent analysis of the information collected pursuant to subsection (b) and oversee the quality of the data collection process. In evaluating the proposals received, the following criteria shall be included for consideration: (1) degree of objectivity; (2) degree of community input; (3) cost; (4) thoroughness of analysis; and (5) experience. The service contract shall provide for a preliminary analysis of the information collected during the first six months of the contract within thirty days.

(e) The City Manager shall pursue such funding as may be available to support the implementation of this ordinance from available public, non-profit, and private sources.

Section 2. That this ordinance is hereby declared to be an emergency measure, necessary for the immediate preservation of the public peace, health and safety and it shall go into effect forthwith. The reason for the emergency is the immediate necessity of instituting strong and substantive measures to provide the greatest possible protection from the spectre of any practice of racial profiling in the City's law enforcement activities at the earliest possible time

Passed March 28 A.D., 2001

_____
Mayor

Attest: _____
Clerk

I HEREBY CERTIFY THAT ORDINANCE NO. 88 2001 WAS PUBLISHED IN THE CITY BULLETIN IN ACCORDANCE WITH THE CHARTER ON 4/4/01

_____
Clerk of Council

TOTAL P.03